**UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **ANNA HADLOCK** | : | |
| 1246 Riverside Drive | : | |
| Wilmington, DE 19809 | : | |
| **Plaintiff** | : | **CIVIL COMPLAINT** |
| | : | |
| **v.** | : | |
| | : | |
| **MINCEY FITZPATRICK ROSS, LLC** | : | **NO: _____** |
| 1650 Market St. | : | |
| Suite 3600 | : | |
| Philadelphia, PA 19103 | : | |
| | : | |
| **AND** | : | |
| | : | |
| **CLIFFORD SKINNER** | : | |
| 5444 Berks Street | : | |
| Philadelphia, PA 19131 | : | |
| **Defendants**. | : | |
| | : | |

## <u>COMPLAINT</u>

### I.    PARTIES

1.    Plaintiff is an adult individual and private figure who is domiciled in Delaware and New Hampshire.

2.    Defendant Mincey Fitzpatrick Ross, LLC (hereafter "MFR") is a limited liability company with a principal place of business at 165o Market Street, Suite 3600, Philadelphia, PA 19103.

3.    At all times material hereto, Thomas Fitzpatrick, Esq. and Kevin Mincey, Esq., were employees, principals, and agents of Defendant MFR and were acting in the course and scope of their employment at all times material hereto.

4.      At all times material hereto, Teresa M. Lundy and TML Communications were agents of Defendant MFR.

5.      Defendant Clifford Skinner (hereafter "Skinner") is an adult individual who resides at 5444 Berks Street, Philadelphia, PA 19131.

6.      At all times pertinent hereto, Defendant MFR were acting as attorneys and agents for Defendant Skinner.

7.      Each and every defendant is liable for the acts of its agents, servants, and/or employees.

## II.      JURISDICTION AND VENUE

8.      This Court has subject matter jurisdiction in this case pursuant to 28 U.S.C. § 1332. The amount in controversy substantially exceeds the requirement for Federal Diversity Jurisdiction and to guarantee a jury trial, exclusive of interest and costs. The Defendants are citizens of states other than the states in which the Plaintiff resides.

9.      This Court has jurisdiction over the parties because the Defendants reside in the Eastern District of Pennsylvania and targeted their specific statements, publications, and tortious conduct at issue in this action directly toward and in The Eastern District of Pennsylvania, and nationally.

10.      Venue is proper pursuant to 28 U.S.C. § 1391 because all Defendants are subject to the Courts' personal jurisdiction with respect to the civil action in question. The Defendants published their defamatory statements in the Eastern District of Pennsylvania.

### III.    FACTS

11.    On June 15, 2022, Defendants filed a complaint in the Philadelphia Court of Common Pleas against Plaintiff.[1]

12.    Therein Defendants repeatedly accused Plaintiff of intentionally falsifying police reports, lying to the police officers, lying in court, and engaging in illegal and immoral conduct for the intentional purpose of placing Defendant Skinner in jail, all of which is false.

13.    Rather than simply litigate their frivolous and manufactured claims, Defendants perpetrated a scheme to spread their false narrative across the internet in a plain effort to influence potential jurors and destroy the reputation of a young woman just starting her legal career.

14.    After filing the Complaint with the Court, Defendant MFR engaged Teresa M. Lundy of TML Communications to draft and spread their false narrative using the PR Newswire Media website. The Article posted by Mincey Fitzpatrick Ross, LLC and Teresa Lundy is attached as Exhibit "A."

15.    The intent behind this malicious scheme was to cause maximum reputational and emotional harm to leverage a monetary payment for their otherwise meritless lawsuit.

16.    The title of the article is intentionally misleading, false and defamatory, and states:

**Mincey Fitzpatrick Ross Files Suit On Behalf Of A Man Who Spent Years In Prison After He Was Falsely Accused Of Sexual Assault By An Aspiring Lawyer.**

17.    Defendants intentionally stated that Ms. Hadlock was "an aspiring lawyer" to detract her reputation among her peers and colleagues in the legal community.

18.    The article proclaims the following false facts:

---

[1] The lawsuit is presently pending in this Court before the Honorable Michael M. Baylson. *See Skinner v. Hadlock*, 2:22-cv-03087.

- "Anna Hadlock . . . falsely claimed that Plaintiff, Clifford Skinner, raped her multiple times. These false allegations led to Mr. Skinner being arrested and incarcerated for approximately 700 days while awaiting trial";

- "All charges were withdrawn against Mr. Skinner in the middle of his criminal trial after Ms. Hadlock was confronted during cross examination with text messages that **proved the relationship was consensual**";

- "[I]t was shown *during the same testimony* that Ms. Hadlock provided an incomplete thread of text messages between her and Mr. Skinner to the Philadelphia Police Department"; and

- "Ms. Hadlock, a graduate student working for the program, used the fabricated sexual assault claims to bolster civil claims she later filed against the program and the graduate school that placed her there."

19.     Further, Mr. Fitzpatrick specifically stated, "This case is about justice. Mr. Skinner lost his livelihood and two years of his life while awaiting trial on **false charges** based on the **false testimony** of Anna Hadlock." (emphasis added).

20.     Mr. Mincey piggybacks on Mr. Fitzpatrick's quote and stated: "Mr. Skinner had to live with the prospect of spending the rest of his life in prison while being branded as a rapist **due to Ms. Hadlock's <u>deceitful</u> conduct**. It is difficult to imagine a more serious injury, than the loss of years of one's life due to wrongful incarceration. Mr. Skinner's incarceration was the result of a **cunning plan by the defendant** and **not accidental**." (emphasis added).

21.     Defendants intentionally and maliciously omitted key information regarding the underlying criminal case in an effort to distort the truth that Ms. Hadlock did not lie before the court and was raped three times by Defendant Skinner.

22.     Specifically, Defendants' claim that "all charges were withdrawn," and evidence proved "the relationship was consensual" intentionally omits the clear finding by the trial judge on the record to the contrary:

> But if you rest, ***there's enough [evidence]*** on this record to deny a judgment of acquittal, so if you rest, that's not the proper remedy. If you wish to withdraw this case, the motion is to withdraw it, because on the record, I cannot legally grant a judgment of acquittal, ***because the evidence is beyond that standard***. Do you understand that?

23.     Defendants' claim that Ms. Hadlock provided an incomplete account of her text messages which was only revealed at the time of trial, is knowingly false.

24.     Rather, Plaintiff (1) informed the investigating police officer that she deleted several messages because they made her sick (2) Defendant Skinner's criminal counsel in the underlying criminal case had access to a complete record of communications between Defendant Skinner and Plaintiff, yet failed to provide them to the District Attorney's Office (3) Plaintiff and others made several attempts over the previous years to do forensic searches on Defendant's phones, which Defendant refused, and (4) Ms. Hadlock was open and honest about the text messages during the entire criminal proceeding **and told the Judge, DA, and Defense Attorney at the Preliminary Hearing (in Skinner's presence)** that she deleted certain portions of the messages.

25.     All of the Defendants' claims are false.

26.     The exclusive source for each article is "Mincey Fitzpatrick Ross, LLC."

27.     The PR Newswire article published exclusively by these Defendants was published on the internet for anyone to read.

28.     Defendants knew their article on PR Newswire would be picked up and shared by other media outlets and intended that other media outlets would spread their false and defamatory narrative to the significant detriment of Plaintiff.

29.     By June 16, 2022, Defendant's false and defamatory republication of the Complaint spread to over 40 different websites. The posts from all 40 websites are attached as Exhibit "B."

30.     Each republication was specifically intended, authorized, and foreseeable by all named Defendants evidenced by their initial use of PRNewswire, which specifically distributes press releases and "news" for a fee.[2]

31.     Defendants also published their defamatory statements on their twitter accounts, followed by dozens of lawyers in and around the Eastern District of Pennsylvania, all of whom received the false and defamatory statements identifying Plaintiff.

32.     Plaintiff first learned of the defamatory publications through her employer and her colleagues.

33.     Plaintiff immediately sent cease and desist letters to nearly fifty entities who republished the statements as part of their agreement with the Defendants and their agents.

34.     As a direct and proximate result of Defendants' defamatory statements, Plaintiff has suffered reputational harm in addition to the non-economic damages that naturally flow therefrom including embarrassment and humiliation.

---

[2]

https://www.cision.com/prnewswire/?utm_medium=referral&utm_source=prnewswire&utm_content=product&utm_campaign=2022-pr-distribution-product-page

IV.     **THEORIES OF LIABILITY AND CAUSES OF ACTION**

**COUNT I**
*Defamation*
**Plaintiff v. Defendants**

35.     Plaintiff incorporates by reference the other averments contained in this Complaint as though fully set forth at length herein.

36.     Defendants' remarks, implications and innuendos are all false.

37.     The Defendant knowingly created, published and spread an unfair, inaccurate, and incomplete story.

38.     Plaintiff maintains that she was raped by Defendant Skinner and any statement to the contrary is false.

39.     Defendant knew (or recklessly disregarded) that their statements, implications, and innuendoes surrounding Plaintiff were false and misleading.  Indeed, the Defendants knew that Plaintiff ***promptly reported she deleted text messages*** from the outset and testified as much in the preliminary hearing:

> [10]     THE COURT:  Did you keep the text messages
> [11]  by any chance?
> [12]     THE WITNESS:  I deleted them off of my
> [13]  cell phone, but I was able to find some of them
> [14]  on my laptop.
> [15]     THE COURT:  I'm going to order those from
> [16]  you.

At the conclusion of the Preliminary hearing, the Court found there was sufficient probable cause to support all charges.

40.     Plaintiff reported to police officers the same thing that she deleted messages. In follow-up text messages to the Police, Plaintiff sent all the messages she had to the requesting officer with the words:

7

"This *is all I could find*, this was on his 'work phone.'"

41.     In her October 2020 deposition in the civil case, Plaintiff testified she deleted

messages, photos, and videos, between her and Defendant Skinner:

```
13      Q.   Okay.  And we talked about this a
14  little bit last time, but at the bottom of 29 to
15  35, just as a "for example," there are pictures
16  and videos referenced and text messages
17  referenced between you and Cliff that aren't in
18  Jane Doe 9, correct?
19      A.   Correct.
20      Q.   So how did you get what you got in
21  Jane Doe 9?
22      A.   These are -- these are from my
23  computer, not my cell phone, because I deleted
24  the messages from my cell phone.
```

42.     Plaintiff even retained a forensic examiner to pull any files from her phone.

43.     Plaintiff sent subpoenas for Defendant Skinner's personal and work phones to

obtain all the data, but Defendant refused to cooperate and objected.

44.     Plaintiff sought the password to Defendant's work phone, for which he had no

reasonable expectation of privacy, and Defendant Skinner asserted Fifth Amendment privilege and

refused to give the password to his work phone, where said messages would exist.

45.     Yet, Defendants painted Plaintiff, who fully maintains that she was raped by

Defendant Skinner, as someone who withheld evidence until she was somehow caught at trial.

46.     The District Attorney never even spoke to Ms. Hadlock before withdrawing the

charges.

47.     The District Attorney was assigned to the matter only a few days before trial.

48.     Defendants' statements were not couched as allegations or opinions, but matters of

fact.

8

49.     Defendants' false and defamatory statements, innuendos and implications have severely injured Plaintiff in that they have tended to blacken and besmirch Plaintiff's reputation, have exposed Plaintiff to public contempt, ridicule and hatred, have conveyed the impression that Plaintiff is unethical, and has detracted from Plaintiff's respect as an attorney.

50.     Defendants' false allegations alleging criminal misconduct on the part of Plaintiff constitutes defamation *per se* as they falsely accuse Plaintiff of lying to police officers and judicial officials, and before a jury in court.

51.     As a proximate result of the Defendants' malicious, intentional, and reckless conduct as set forth above, Plaintiff is entitled to such damages as will compensate her for the injury to her professional and personal reputation, and punitive damages to punish the Defendants for their conduct and deter them and others similarly situated from similar acts in the future.

**<u>COUNT II</u>**
***False Light***
**Plaintiff v. Defendants**

52.     Plaintiff incorporates by reference the other averments contained in this Complaint as though fully set forth at length herein.

53.     Defendants' remarks, implications and innuendos are all false.

54.     The Defendant knowingly created, published and spread an unfair, inaccurate and incomplete story to place Plaintiff in a false light.

55.     Plaintiff maintains that she was raped by Defendant Skinner and any statement to the contrary is false.

56.     Defendant knew (or recklessly disregarded) that their statements, implications, innuendoes surrounding Plaintiff were false and misleading. Indeed, the Defendants knew that

Plaintiff ***promptly reported she deleted text messages*** from the outset and testified as much in the preliminary hearing:

> [10]    THE COURT:  Did you keep the text messages
> [11] by any chance?
> [12]    THE WITNESS:  I deleted them off of my
> [13] cell phone, but I was able to find some of them
> [14] on my laptop.
> [15]    THE COURT:  I'm going to order those from
> [16] you.

At the conclusion of the Preliminary hearing, the Court found there was sufficient probable cause to support all charges.

57.    Plaintiff reported to police officers the same thing that she deleted messages. In follow-up text messages to the Police, Plaintiff sent all the messages she had to the requesting officer with the words:

"This ***is all I could find***, this was on his 'work phone.'"

58.    In her October 2020 deposition in the civil case, Plaintiff testified she deleted messages, photos, and videos, between her and Defendant Skinner:

> 13    Q.   Okay.  And we talked about this a
> 14 little bit last time, but at the bottom of 29 to
> 15 35, just as a "for example," there are pictures
> 16 and videos referenced and text messages
> 17 referenced between you and Cliff that aren't in
> 18 Jane Doe 9, correct?
> 19    A.   Correct.
> 20    Q.   So how did you get what you got in
> 21 Jane Doe 9?
> 22    A.   These are -- these are from my
> 23 computer, not my cell phone, because I deleted
> 24 the messages from my cell phone.

59.    Plaintiff even retained a forensic examiner to pull any files from her phone.

60.     Plaintiff sent subpoenas for Defendant Skinner's personal and work phones to obtain all the data, but Defendant refused to cooperate and objected.

61.     Plaintiff sought the password to Defendant's work phone, for which he had no reasonable expectation of privacy, and Defendant Skinner asserted Fifth Amendment privilege and refused to give the password to his work phone, where said messages would exist.

62.     Yet, Defendants painted Plaintiff, who fully maintains that she was raped by Defendant Skinner, as someone who withheld evidence until she was somehow caught at trial.

63.     Defendants' false and defamatory statements, innuendos and implications have severely injured Plaintiff in that they have tended to blacken and besmirch Plaintiff's reputation, have exposed Plaintiff to public contempt, ridicule and hatred, have conveyed the impression that Plaintiff is unethical, and has detracted from Plaintiff's respect as an attorney.

64.     Defendants' false allegations alleging criminal misconduct on the part of Plaintiff constitutes defamation *per se* as they falsely accuse Plaintiff of lying to police officers and judicial officials, and before a jury in court.

65.     The aforementioned false light in which Plaintiff was placed would be highly offensive to a reasonable person.

66.     The Defendant identified Plaintiff by name, who at all times has maintained she was a rape victim, privately and all times hereto was never identified on the public dockets.

67.     As described above, the defendants had knowledge of, or acted in reckless disregard as to, the falsity of the matter they communicated and the false light in which Plaintiff was placed.

68.     The publication has caused Plaintiff irreparable harm to her reputation and business as well as mental suffering, shame, humiliation, physical and emotional distress.

69.     As a direct and proximate cause of the Defendants' malicious, intentional, or

reckless conduct as set forth above, Plaintiff is entitled to such damages that will compensate for her injuries, including punitive damages to punish the Defendants for their conduct and deter them and others similarly situated from similar acts in the future.

**WHEREFORE**, Plaintiff demands judgment against all defendants, jointly, severally and/or individually, in an amount substantially in excess of the jurisdictional limit, compensatory damages, punitive damages, attorneys' fees, costs and interest, together with any further relief which this Court deems just and appropriate under the circumstances.

## <u>NOTICE OF PRESERVATION OF EVIDENCE</u>

PLAINTIFF HEREBY DEMANDS AND REQUESTS THAT DEFENDANTS TAKE NECESSARY ACTION TO ENSURE THE PRESERVATION OF ALL DOCUMENTS, COMMUNICATIONS, WHETHER ELECTRONIC OR OTHERWISE, ITEMS AND THINGS IN THE POSSESSION OR CONTROL OF ANY PARTY TO THIS ACTION, OR ANY ENTITY OVER WHICH ANY PARTY TO THIS ACTION HAS CONTROL, OR FROM WHOM ANY PARTY TO THIS ACTION HAS ACCESS TO, ANY DOCUMENTS, ITEMS, OR THINGS WHICH MAY IN ANY MANNER BE RELEVANT TO OR RELATE TO THE SUBJECT MATTER OF THE CAUSES OF ACTION AND/OR THE ALLEGATIONS OF THIS COMPLAINT.

**[this space is intentionally left blank]**

## DEMAND FOR JURY TRIAL

Plaintiff demands a jury trial.

Respectfully submitted,

**THE BEASLEY FIRM, LLC**

BY:    */s/ Andrew M. Marth*
JAMES E. BEASLEY, JR., ESQUIRE
LANE R. JUBB, JR., ESQUIRE
ANDREW M. MARTH, ESQUIRE
1125 Walnut Street
Philadelphia, PA 19107
215.592.1000
215.592.8360 (telefax)
ID. Nos.: 319272/330361
Attorneys for Defendant
*Jim.beasley@beasleyfirm.com*
*Lane.jubb@beasleyfirm.com*
*Andrew.marth@beasleyfirm.com*

Dated: 17 May 2023