# IN THE UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **CLIFFORD SKINNER** | : | |
| Plaintiff | : | |
| | : | |
| v. | : | **Civil Action** |
| | : | |
| **ANNA HADLOCK** | : | **Case No.: 2:22-cv—3087** |
| Defendant | : | |

| | | |
|---|---|---|
| **ANNA HADLOCK** | : | |
| Plaintiff | : | |
| | : | **Civil Action** |
| v. | : | |
| | : | **Case No.: 2:23-cv-1870** |
| **CLIFFORD SKINNER** | : | |
| Defendant | : | |

## DEFENDANT HADLOCK'S MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR NEW TRIAL

# **TABLE OF CONTENTS**

Page

Table of Contents……………………………………………………………………..i

Table of Authorities…………………………………………………………………..ii

I.  INTRODUCTION…………………………………………………………….1

II. MATTER BEFORE THE COURT……………………………………………3

III. QUESTIONS PRESENTED…………………………………………………..3

IV. STATEMENT OF FACTS…………………………………………………….3

V.  LEGAL ARGUMENT…………………………………………………………5

    A.    The Court Reversibly Erred in Holding the Jobs and Geographic Locations of Venirepersons Are Not Valid, Race-Neutral Reasons to Strike Them……………………………….5

    B.    The Court Erred in Permitting Skinner's Counsel to Ask a Fact Witness Hypothetical Questions About What She May Have Done in Different Circumstances……………..14

VI. CONCLUSION ……………………………………………………………….16

# **TABLE OF AUTHORITIES**

Page

Cases

Batson v. Kentucky, 476 U.S. 79 (1986)..............................................6-7, 13

Edmonson v. Leesville Concrete Co., 599 U.S. 614 (1991)............................6

Forrest v. Beloit Corp., 424 F.3d 344 (3d Cir. 2005)...............................10, 13

Garrey v. Kelly, 162 F.4th 27 (1st Cir. 2025)............................................12, 13

Gulf, Colorado & Sante Fe Ry. Co. v. Shane, 157 U.S. 348 (1895)............6, 14

Hernandez v. New York, 500 U.S. 352 (1991)................................................7-8

Howard v. Moore, 131 F.3d 399 (4th Cir. 1997).........................................10, 13

Kirk v. Raymond Indus., Inc., 61 F.3d 147 (1995), cert. denied, 516
U.S. 1145 (1996).....................................................................................6, 14

Purkett v. Elem, 514 U.S. 765 (1995)............................................................7

Ramirez v. Plains All Am. GP, LLC, 2024 U.S. App. LEXIS 7992, 2024
WL 1434451 (5th Cir. 2024).....................................................................11, 13

Saunders v. Tennis, 483 Fed. Appx. 738 (3d Cir. 2012)...................8-9, 10, 13

Swain v. Alabama, 380 U.S. 202 (1965)....................................................6, 13

United States v. Adigun, 609 Fed. Appx. 718 (3d Cir. 2015).....................9, 13

United States v. Clemons, 941 F.2d 321 (5th Cir. 1991)..................................7

United States v. Grandison, 885 F.2d 143 (4th Cir. 1989).........................10, 13

United States v. Maxwell, 473 F.3d 868 (8th Cir. 2007)...........................11, 13

United States v. Maxwell, 160 F.3d 1071 (6th Cir. 1998)..........................12, 13

United States v. McFerron, 163 F.3d 952 (6th Cir. 1998)................................6

United States v. Robinson, U.S. App. LEXIS 14837, 2022 WL 1741068 (8th Cir. 2022).................................................................................11, 13

United States v. Young, 753 F.3d 757 (8th Cir. 2014)..............................12, 13

Statutes

28 U.S.C. § 1870........................................................................................5

Rules of Court

F.R.E. 602...............................................................................................14

F.R.E. 703...............................................................................................14

**I.      INTRODUCTION**

Ms. Hadlock moves for a new trial on two grounds she preserved at trial.  First, when Mr. Skinner objected that Ms. Hadlock's use of two peremptory strikes allegedly violated Batson's prohibition against race-based strikes, Ms. Hadlock promptly proffered the race-neutral bases for those strikes:  the sister of one venireperson is a police officer and Ms. Hadlock is criticizing the Philadelphia Police Department and District Attorney's Office for failing to do a proper investigation; the other venireperson was struck because she stated in her questionnaire that she was working for "Family Support Services" (a social services organization), Mr. Skinner was also employed by a social services organization at the time in question and Ms. Hadlock is also critical of that organization; and both jurors live in Philadelphia (and, again, Ms. Hadlock is criticizing the Philadelphia Police Department and Philadelphia District Attorney's Office as well as the University of Pennsylvania, the City of Philadelphia's largest private employer).

By statute, Ms. Hadlock has a right to use three peremptory strikes to eliminate jurors who, in the opinion of her counsel, may harbor unacknowledged or unconscious biases.  In addition, there is a plethora of Circuit Court decisions, including decisions of the Third Circuit, holding that

1

a venireperson's job and geographic location are both valid, race-neutral reasons for striking that juror, yet this Court declared that they are not valid, race-neutral reasons "when they're black" and seated the jurors over Ms. Hadlock's objections.  That was reversible error *per se*.  It was not cured by the court's offer to question the two struck jurors further, as counsel has a statutory right to eliminate jurors counsel believes may harbor unacknowledged or unconscious biases (*i.e.,* biases to which the jurors may not openly admit or of which they may not be aware).

The Court also erroneously permitted Mr. Skinner to ask former ADA Combs hypothetical questions about what she might have done differently, under different circumstances (if she had seen certain documents she did not know about when she represented the Commonwealth at Mr. Skinner's preliminary hearing).  Ms. Combs was offered as a fact witness, not an expert witness and Mr. Skinner had not complied with the expert witness discovery rules prior to eliciting this testimony.

This testimony unfairly prejudiced Ms. Hadlock.  It effectively converted Ms. Combs into a surprise expert witness, despite Mr. Skinner's failure to comply with the expert disclosure requirements.  Accordingly, a new trial is warranted and should be granted.

## II. MATTER BEFORE THE COURT

Defendant Hadlock's Motion for New Trial.

## III. QUESTIONS PRESENTED

1. Did this Honorable Court err in determining that the employment and geographic location of venirepersons are not race-neutral reasons for a party to strike venirepersons from the jury?

**Suggested Answer: Yes.**

2. Was it error to allow Mr. Skinner to ask speculative hypothetical opinion questions of a fact witness, effectively converting her into an undisclosed expert witness?

**Suggested Answer: Yes.**

## IV. STATEMENT OF FACTS

In late August of 2018, defendant Anna Hadlock, aged twenty-two, started her graduate studies in the University of Pennsylvania's ("U of PA") Master of Social Work program. Among its requirements was completion of an internship in the field each year (N.T. 2/4/26 pp. 177, 179, 181).

The first-year internship was assigned by the U of PA, not chosen by the student (N.T. 2/4/26 p. 181). Although Ms. Hadlock had advised the U of PA she wanted to work with adolescents, it placed her at DePaul House, where she would instead be working with adult men who had been

3

incarcerated and were reentering society (N.T. 2/3/26 pp. 173-74; 2/4/26 pp. 180-81).

On August 29, 2018, Ms. Hadlock was interviewed by Sandra Guillory of DePaul House (N.T. 2/3/26 p. 180). While she was in a conference room waiting for the interview to begin, a man popped his head in and commented on her dress (N.T. 2/3/26 p. 181).

When she returned to DePaul House on Thursday September 6, 2018 to start her internship, she was introduced to him and learned he was Clifford Skinner, the case manager to whom his supervisor Ms. Guillory had assigned her (N.T. 2/2/26 pp. 32-36; 2/3/26 pp. 181). Mr. Skinner was forty-eight years old, over 6 feet tall and had spent fifteen years in jail after pleading guilty to manslaughter and reckless endangerment of another person (NT. 2/3/26 pp. 9, 11).

What followed between Ms. Hadlock and Mr. Skinner forms the core of this dispute. Mr. Skinner testified he and Ms. Hadlock had consensual sex over the course of that Thursday, Friday and the following Monday (N.T. 2/2/26 p. 112). Ms. Hadlock testified Mr. Skinner first told her he had served eighteen years in prison for murder and had also been convicted of assault and is six foot four and weighs 275 pounds and was the strongest and fastest

man on the cellblock and then, having put her in fear for her life, he raped her repeatedly (N.T. 2/4/26 p. 222; *see also* N.T. 2/3/26 p. 186).

It is undisputed that Ms. Hadlock later went to the U of PA Health Center for antibiotics and told them about being raped (N.T. 2/3/26 p. 248). They arranged for a rape kit to be done at PSARC and she went there, accompanied by a detective from the University police (N.T. 2/3/26 p. 248).

She also made a complaint of sexual harassment to Mr. Skinner's boss, Sandra Guillory (N.T. 2/2/26 p. 104). Mr. Skinner was eventually terminated from his position at DePaul House on January 3, 2019 due to subsequent sexual harassment complaints by six other employees (N.T. 2/2/26 pp. 105-06). Ms. Guillory did not even mention Ms. Hadlock's complaint when she fired him (N.T. 2/2/26 p. 106).

Mr. Skinner was arrested and charged with rape in late January of 2019 (N.T. 2/2/26 p. 106-08). The charges were withdrawn at his trial on December 8, 2021 (N.T. 2/2/26 p. 109-10). This action followed.

## V. LEGAL ARGUMENT

### A. The Court Reversibly Erred in Holding the Jobs and Geographic Locations of Venirepersons Are Not Valid, Race-Neutral Reasons to Strike Them

Federal law provides that "in civil cases, each party shall be entitled to three peremptory challenges." 28 U.S.C. § 1870. These peremptory strikes

5

may be used to eliminate venirepersons who, in the opinion of a party's counsel, may harbor unacknowledged or unconscious biases. As the United States Supreme Court has explained:

> While challenges for cause permit rejection of jurors on a narrowly specified, provable and legally cognizable basis of partiality, the peremptory permits rejection for a **real or imagined partiality that is less easily designated or demonstrable**.

Swain v. Alabama, 380 U.S. 202, 220 (1965). (Emphases supplied.) It is well-established that impairment of this statutory right constitutes reversible error *per se*. Gulf, Colorado & Sante Fe Ry. Co. v. Shane, 157 U.S. 348, 351 (1895); Kirk v. Raymond Indus., Inc., 61 F.3d 147, 158 (1995), cert. denied, 516 U.S. 1145 (1996). *See also* United States v. McFerron, 163 F.3d 952 (6th Cir. 1998) (rejecting argument that harmless error applies to denial or impairment of right to exercise peremptory challenges).

In Batson v. Kentucky, 476 U.S. 79 (1986), the Court created a limited exception to this right to exercise peremptory challenges for instances in which the striking of potential jurors in a criminal case was based on their race, in violation of the Equal Protection Clause. This prohibition has since been extended to civil cases. Edmonson v. Leesville Concrete Co., 599 U.S. 614 (1991).

The Court "outlined a three-step process for evaluating claims that a [party] has used peremptory challenges in a manner violating the Equal Protection Clause." Hernandez v. New York, 500 U.S. 352, 358 (1991). First, the party raising the Batson challenge must make a *prima facie* showing that the striking party exercised its peremptory challenge on the basis of race or other protected characteristic. Id. "Second, if the requisite showing has been made, the burden shifts to the [striking party] to articulate a race-neutral explanation for striking the jurors in question." Id. at 358-59. "Finally, the trial court must determine whether the [challenging party] has carried his burden of proving purposeful discrimination." Id. at 359.

A race-neutral explanation is based upon something other than the potential juror's race. Hernandez, 500 U.S. at 360. The second step of the Batson process "does not demand an explanation that is persuasive, or even plausible." Purkett v. Elem, 514 U.S. 765, 768 (1995). Instead, the question is the "facial validity" of the striking party's explanation. Hernandez, 500 U.S. at 360.

To be facially valid, a party's race-neutral explanation "need not be quantifiable and may include intuitive assumptions upon confronting a potential juror." United States v. Clemons, 941 F.2d 321, 325 (5th Cir. 1991). "Unless a discriminatory intent is inherent in the [striking party's]

7

explanation, the reason offered will be deemed race-neutral." Hernandez, 500 U.S. at 360.

In this case, Mr. Skinner objected that Ms. Hadlock had struck two African-American venirepersons, Jurors 6 and 16 (N.T. 2/2/26 p. 34). Ms. Hadlock's counsel responded by offering the race-neutral reasons for which she struck these jurors.

He explained that (a) Juror 6 was struck because he had stated in *voir dire* that his sister is a Philadelphia police officer[1] and "[p]art of our arguments here are that the police department and the District Attorney's Office didn't do a proper investigation" (N.T. 2/2/26 p. 34); (b) Juror 16 was struck because she stated in her questionnaire that she was working for "Family Support Services" (a social services organization) (N.T. 2/2/26 p. 39); and (c) both jurors live in Philadelphia (N.T. 2/2/26 p. 41).  Ms. Hadlock's attorney was concerned about Juror 16's employment in a social services organization because Ms. Hadlock was going to be presenting criticism of one and because people working for such organizations are likely to harbor sympathies for the down-trodden and those accused of and/or imprisoned for crimes, such as Mr. Skinner. *See, e.g.,* Saunders v. Tennis, 483 Fed. Appx. 738, 740-41 (3d Cir. 2012) in which the prosecutor explained

---

[1] *See* N.T. 2/26/15 (Juror 6 stating his sister is a Philadelphia police officer).

8

he had struck certain venirepersons "pursuant to his general jury-selection philosophies **disfavoring social workers** and psychiatrists, as well as former arrestees and their relatives and friends…" (Emphases supplied.)

It is well-recognized by courts that a potential juror's employment is a legitimate, race-neutral reason for striking the juror, as is the juror's geographic location. Indeed, there are numerous Circuit Court of Appeals decisions, including those of the Third Circuit, so holding.

For example, in <u>United States v. Adigun</u>, 609 Fed. Appx. 718 (3d Cir. 2015), the Third Circuit Court of Appeals upheld the District Court's rejection of a <u>Batson</u> challenge and found "the record is clear that the Government provided several **race-neutral** reasons for striking the juror" where the Government stated it had struck the juror "because (1) she was a **state employee**, and the Government's experience was that state employees had a 'liberal standpoint;' (2) **she had only recently moved to Harrisburg, the trial venue**; and (3) she was a **relatively uneducated typist**." (Emphases supplied.) The Third Circuit also rejected a <u>Batson</u> challenge made after the prosecutor had exercised eight of his nine peremptory strikes to remove an African-American woman from the venire, where the prosecutor explained he had done so "pursuant to his general jury-selection philosophies **disfavoring social workers and psychiatrists**, as well as

9

former arrestees and their relatives and friends, and **preferring** law enforcement personnel**,** public employees, victims of crime, older jurors, and **those born and raised outside of Philadelphia**." Saunders v. Tennis, 483 Fed. Appx. 738, 740-41 (3d Cir. 2012).  (Emphases supplied.) Additionally, the Third Circuit held the District Court correctly determined the defendant had offered an acceptable, race-neutral reason for striking a potential juror where defense counsel indicated the juror was struck because she was a **nurse** and the defendant anticipated putting on testimony that would be **critical of the wound care the plaintiff received** following his accident.  Forrest v. Beloit Corp., 424 F.3d 344 (3d Cir. 2005).

Other Circuit Courts have reached similar conclusions.  The Fourth Circuit held in Howard v. Moore, 131 F.3d 399, 408 (4th Cir. 1997): "**Employment** is a **legitimate race-neutral factor** that may be relied upon by a prosecutor for challenging a potential juror."  (Emphases supplied.) *Accord* United States v. Grandison, 885 F.2d 143, 149 (4th Cir. 1989) ("Numerous valid factors may influence a prosecutor to strike a particular potential juror, including **current and past employment**"). (Emphases supplied.)

The prosecutor in Howard had struck six of the seven Black prospective jurors.  He explained he struck one of them because "she had an 'erratic' work

10

history [and] her husband was 'unemployed'" and another due to (*inter alia*) "her 'unstable work history,'" which the Court held were "legitimate race-neutral" reasons.  The Fifth Circuit similarly upheld the striking of a Hispanic venireperson for "lack of a job and her husband's job as a lease operator," finding this "provides an adequate race-neutral reason for the strike." Ramirez v. Plains All Am. GP, LLC, 2024 U.S. App. LEXIS 7992, 2024 WL 1434451 (5th Cir. 2024).

The Eighth Circuit has held "[t]he Government articulated two **valid race-neutral reasons** to rebut [the criminal defendant's] Robinson's *prima facie* showing" of race discrimination, where "[i]t explained that it struck venireperson 10 because she had visited her brother in prison and was **previously employed at an organization that worked with young men in the criminal justice system**." United States v. Robinson, U.S. App. LEXIS 14837 at *4, 2022 WL 1741068 at *4 (8th Cir. 2022).  (Emphases supplied.)  The Court explained that "[e]ven though venireperson 10 had not worked at the organization for several years, past employment is a valid, race-neutral reason to strike a potential juror." Id. *Accord* United States v. Maxwell, 473 F.3d 868, 872 (8th Cir. 2007) ("The **inference that a juror's employment might make the juror more sympathetic to a criminal defendant** is a **valid, race-neutral reason**

11

for striking a juror."); United States v. Young, 753 F.3d 757, 780-81 (8th Cir. 2014) (working at an organization "with a goal of rehabilitating criminals following their release from prison" is a valid, race-neutral reason for striking a potential juror). (Emphases supplied.)

By the same token, the Sixth Circuit upheld the striking of the only remaining Black venireperson, where the prosecutor had specified "permissible reasons" for the strike, including that "she was a **guidance counselor** and in his experience such people "were overly sympathetic with [criminal] defendants." United States v. Maxwell, 160 F.3d 1071 (6th Cir. 1998). (Emphases supplied.) *Accord* Garrey v. Kelly, 162 F.4th 27, 31 (1st Cir. 2025) (upholding striking of sole minority venireperson because she was a guidance counselor).

Applying the foregoing caselaw, Ms. Hadlock's counsel struck Jurors 6 and 16 for valid, race-neutral reasons, as her counsel pointed out (N.T. 2/2/26 p. 41. The Court ruled otherwise, stating that the jurors' employment and geographic location were "[n]ot [valid grounds] if they're black":

> MR. MARTH: My question was **whether or not it's a valid position to strike someone where they lived and based off the job?**
>
> MR. JUBB: Your Honor, if I can add –

12

> THE COURT: **Not if they're black**. In a case where – this is a case in which your client, Ms. Hadlock, is white and Mr. Skinner is black…

*Id.* (Emphases supplied.)

Based on its erroneous conclusion that these reasons were not valid grounds to strike jurors "if they're black," the Court offered to question the witnesses further (*id.*). Ms. Hadlock's counsel correctly refused the offer, stating: "We've given you two independent reasons" which "I think … are valid" under Batson (*id.*).

<u>Counsel's statement that the venirepersons' jobs and location were valid, race-neutral reasons for striking them was solidly supported by a plethora of cases. *See, e.g.*, Adigun; Saunders; Forrest; Howard; Grandison; Ramirez; Robinson; Maxwell; Young; Garrey</u>. These cases and others recognize counsel's right to exercise peremptory strikes to eliminate venirepersons on the ground that venirepersons holding certain jobs and/or living in certain locations were, in his opinion, disposed to harbor unacknowledged or unconscious biases in favor of Mr. Skinner's position and against Ms. Hadlock's. Swain.

Further questioning would not address biases to which the witnesses were unwilling to openly admit or of which they were not conscious. The Court's insistence on seating them despite counsel's proffer of valid, race-

13

neutral reasons for the strikes effectively eviscerated Ms. Hadlock's statutory right to use her peremptory strikes on venirepersons she believed were prone to harbor unacknowledged or unconscious biases.

That constitutes reversible error *per se*. Gulf, Colorado & Sante Fe Ry, 157 U.S. at 351; Kirk, 61 F.3d at p. 158. Accordingly, a new trial is required.

### B. The Court Erred in Permitting Skinner's Counsel to Ask a Fact Witness Hypothetical Questions About What She May Have Done in Different Circumstances

Pursuant to F.R.E. 602, a fact witness is only permitted to testify to matters about which the witness had personal knowledge. An expert witness, on the other hand, is permitted by F.R.E. 703 to base an opinion on information of which the expert has been made aware and to answer hypothetical questions.

In this case, former Philadelphia Assistant District Attorney Adara Combs was presented as a fact witness to testify about her handling of the preliminary hearing in the criminal case against Mr. Skinner on February 21, 2019 (N.T. 2/4/26 p. 30). However, over Ms. Hadlock's objections, Mr. Skinner was permitted to question Ms. Combs about text messages of which Ms. Combs was unaware when she was handling the said hearing; specifically, a text message Ms. Hadlock allegedly sent Mr. Skinner in

14

response to a text Ms. Combs also had not seen in which Mr. Skinner claimed to be a sapiosexual (N.T. 2/4/26 pp. 49-53).

Mr. Skinner's questions called for Ms. Combs to answer hypothetical questions on the possible effect these texts might have had on the prosecution of Mr. Skinner if she had been aware of them at the time, and Ms. Hadlock's counsel promptly objected to them (N.T. 2/4/26 pp. 50-53). Although the Court had sustained an objection to a similar prior question about a photo Ms. Combs had not seen (N.T. 2/4/26 p. 47), it overruled Ms. Hadlock's objections to the questions about the text messages (N.T. 2/4/26 pp. 50-53).

That was erroneous. Ms. Combs was offered to testify as a **fact** witness. She was not offered as an expert witness, and Mr. Skinner had not complied with the expert witness discovery rules. The Court's ruling allowed Mr. Skinner to use Ms. Combs as a surprise expert witness by asking her hypothetical questions intended to elicit speculative opinions on what she might have done if the circumstances had been different, rather than simply testify to the facts.

This testimony unfairly prejudiced Ms. Hadlock. It effectively converted Ms. Combs into a surprise expert witness, despite Mr. Skinner's

15

failure to comply with the expert disclosure requirements. Accordingly, a new trial is warranted and should be granted.

## VI. <u>CONCLUSION</u>

WHEREFORE, it is respectfully requested that a new trial be granted.

Respectfully submitted,

**THE BEASLEY FIRM, LLC**

BY: <u>/s/ Lane R. Jubb, Jr.</u>
LANE R. JUBB, JR., ESQUIRE
ANDREW M. MARTH, ESQUIRE
BARBARA R. AXELROD, ESQUIRE
1125 Walnut Street
Philadelphia, PA 19107
(215)592-1000
(215)592-8360 (telefax)
lane.jubb@beasleyfirm.com
andrew.marth@beasleyfirm.com
barbara.axelrod@beasleyfirm.com
Attorneys for Defendant Anna Hadlock

Dated: 9 March 2026