**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| CLIFFORD SKINNER | CIVIL ACTION |
|---|---|
| v. | NO. 22-3087 |
| ANNA HADLOCK | |
| ANNA HADLOCK | CIVIL ACTION |
| v. | NO.  23-1870 |
| MINCEY FITZPATRICK ROSS LLC, CLIFFORD SKINNER | |

**MEMORANDUM RE: MOTION FOR A NEW TRIAL**

**Baylson, J.**                                                                                          **July 1, 2026**

## I.    INTRODUCTION

This Motion for New Trial was brought by Defendant Anna Hadlock ("Hadlock") after a jury trial between Hadlock and Plaintiff Clifford Skinner ("Skinner").  Hadlock contends that the undersigned erroneously denied her peremptory strikes, seating two Black jurors based on my Batson analysis.  Hadlock further argues that the Court erroneously permitted Skinner to ask hypothetical questions to former Philadelphia Assistant District Attorney ("ADA") Adara Combs when she was brought as a fact witness rather than an expert witness.  For the following reasons, Defendant's Motion for New Trial is **DENIED**.

1

## II.    FACTS AND PROCEDURAL HISTORY

### a.    Operative Facts Leading Up To The February 2, 2026, Trial[1] (ECF 7; ECF 85[2])

Hadlock is a Caucasian woman.  ECF 7 at 1.  Skinner is a Black man.  Id.  Skinner was a Program Counselor for Depaul USA's Rapid Rehousing Program in Philadelphia, which provides housing assistance services to formerly incarcerated individuals upon their release.  Id.  The program's office is located at Depaul House, 5725 Sprague Street, in Philadelphia.  Id.

On September 6, 2018, Hadlock reported to Depaul House as part of a field work requirement for her Master of Social Work program at the University of Pennsylvania.  Id. at 2; ECF 85 at 1-2.  She met Skinner, her assigned supervisor, on this date.  ECF 7 at 2; ECF 85 at 2. Hadlock worked at Depaul House for three business days and stopped work with Depaul House after September 10, 2018.  ECF 7 at 3.  On September 12, 2018, Hadlock reported to her field supervisor that Skinner had been "inappropriate" with her.  Id.  On September 14 or 15, 2018, Hadlock then reported to a doctor at Penn Health Services and stated that Skinner had raped her. Id.; ECF 85 at 2.  On September 21, 2018, Hadlock hired a lawyer to pursue civil claims against the University of Pennsylvania and Depaul USA, Inc.  ECF 7 at 3.  Finally, on November 9, 2018, she filed a report with the Philadelphia Police Department, stating that Skinner had raped her three times between September 6, 2018, and September 10, 2018.  Id. at 4; ECF 85 at 3.

Due to the civil claims against Depaul USA and the University of Pennsylvania, Skinner was fired by Depaul USA in December 2018.  ECF 85 at 4.  Skinner was then arrested in early 2019 based on Hadlock's accusations.  ECF 7 at 4; ECF 85 at 5.  He was held in custody until his

---

[1] There are some inconsistencies in exact dates between Skinner's Amended Complaint against Hadlock (ECF 7) and Hadlock's Motion for Summary Judgment (ECF 85), but the inconsistencies are immaterial to the operative facts.  For example, Skinner's Amended Complaint states that Hadlock reported a sexual assault to a doctor at Penn Health Services on September 14, 2018, but Hadlock's Motion for Summary Judgment states that this occurred on September 15, 2018.

[2] All cites to the docket ("ECF") refer to Civil Case No. 22-3087 unless otherwise noted as belonging to a different case number.

criminal trial began in December 2021.  At trial, during Hadlock's cross-examination, Skinner's criminal attorney confronted Hadlock with deleted text messages and photos between Hadlock and Skinner that suggested consensual sex, not rape.  ECF 7 at 6-7; ECF 85 at 6-7.  Accordingly, the Philadelphia District Attorney's Office withdrew all criminal charges against Skinner mid-trial.

Upon his release, Skinner filed a civil complaint in the Philadelphia Court of Common Pleas on June 15, 2022, against Hadlock for abuse of process, intentional infliction of emotional distress ("IIED"), false arrest and imprisonment, and malicious prosecution.  No. 23-1870, ECF 1 at 3; ECF 7; ECF 85.  The case was then removed by Hadlock to federal court in August 2022.  ECF 1.  On November 10, 2022, this Court granted in part and denied in part Hadlock's motion to dismiss, dismissing the false arrest and imprisonment claims but allowing the abuse of process, IIED, and malicious prosecution claims to proceed to discovery.  ECF 15.  Upon filing the June 15, 2022, civil complaint, Skinner and his attorneys, Mincey Fitzpatrick Ross LLC, published a press release highlighting the case Skinner was bringing against Hadlock, stating that Skinner was "falsely accused" of sexual assault by an "aspiring lawyer."  No. 23-1870, ECF 1.

Hadlock subsequently filed her own case against Skinner and Mincey Fitzpatrick Ross LLC for defamation and false light on May 17, 2023.  Id.  Discovery was contentious, and involved back-and-forth motions to compel, motions to enforce subpoenas, motions to quash, and failed settlement conferences.  See, e.g., ECF 31; ECF 39; ECF 53; ECF 69; ECF 84.  On May 29, 2024, Hadlock moved for summary judgment on all of Skinner's claims.  ECF 85.  On October 29, 2024, this Court granted summary judgment in favor of Hadlock on the abuse of process and IIED claims but allowed the malicious prosecution claim to proceed to trial due to genuine disputes of material facts.  ECF 96.  This Court consolidated both Skinner's malicious prosecution claim against Hadlock and Hadlock's defamation claim into a single trial, which ran from February 2, 2026 to

3

February 9, 2026.  ECF 50; ECF 165; ECF 170.  Hadlock's Motion for a New Trial (ECF 175) is based upon her contesting of rulings during the voir dire, as well as witness testimony, from this February 2026 trial.

### b. Operative Facts Of The Jury Selection Process (Voir Dire) of the February 2, 2026 Trial

My jury selection process is as follows: I first request Counsel to suggest voir dire questions prior to trial.  Once voir dire begins, I ask the panel a series of yes or no questions relating to their familiarity with the case, the parties, prior jury service, and any other potential barriers to the jurors' abilities to serve as fair and impartial jurors.  Jurors are directed to raise their hands if their answer to any of the questions is in the affirmative.  ECF 172 at 3:14-4:1.  After the questions have been asked, I will bring each potential juror who has answered "yes" to any of the preceding questions to sidebar, one-by-one, for details as to why the juror answered "yes."  Id. at 4:2-6.  Only the lawyers and I are privy to the discussion at sidebar for purposes of privacy.  Id.  During this process, I may remove jurors for a valid excuse or for cause.  Once questioning ends, each Counsel may use up to three peremptory strikes, pursuant to 28 U.S.C. § 1870.  Id. at 30:5-6.  I then seat the first eight jurors in numerical order who have not been excused or struck for either peremptorily or for cause.  Id. at 42:10-43:17.  Should either party raise a Batson challenge, I promptly conduct a Batson inquiry.

Skinner raised a Batson challenge upon noticing that Hadlock's Counsel had used two peremptory strikes on the only two identifiably Black jurors seen on the panel in the courtroom: Jurors 6 and 16.  Id. at 34:1-7.  I stated to Hadlock's Counsel that Batson challenges extend to civil cases.  Id. at 34:10-11; see Edmonson v. Leesville Concrete Co., 500 U.S. 614 (1991).  Hadlock's Counsel, following the burden-shifting procedure established by Batson, proffered race-neutral reasons for both jurors.  For Juror 6, Hadlock's Counsel stated he was struck because he was related

to a police officer (his sister), and Hadlock would be criticizing both the Philadelphia Police Department and the Philadelphia District Attorney's Office as part of this case. ECF 172 at 34:15-19. For Juror 16, Hadlock's Counsel stated that she was struck because she worked for a family services organization and because she was a Philadelphia resident, and Hadlock would similarly be criticizing Depaul USA (also a social services organization, albeit providing work unrelated to family services) and the City of Philadelphia. Id. at 39:17-18.

At this time, I began to conduct a full Batson step three analysis for Juror 6 by bringing Juror 6 up to sidebar and asking additional questions about his relationship with his sister and his ability to serve.[3] Id. at 35:20-38:8. Juror 6 stated that he did not usually talk with his sister about her employment as a police officer except when she had been injured on the job. Id. at 38:5-7. I asked Juror 6 if the fact that his sister was a police officer would impact his ability to see the facts of the case fairly. Id. at 37:22-23. Juror 6 replied: "No, not at all." Id. at 37:24. Before I rendered a decision under step three of Batson regarding whether Juror 6 would be seated, Hadlock's Counsel stated: "The juror will stay… Actually, we'll withdraw that peremptory." Id. at 38:14-19. Juror 6 was then seated on the jury. Id. at 42:21.

For Juror 16, I also began to conduct a full Batson step three analysis. Hadlock's Counsel confirmed that the proffered race-neutral reasons were for Juror 16's work in family services support and for residence in Philadelphia. Id. at 39:17-18. I asked Hadlock's Counsel if they would like to question Juror 16 further regarding either of these reasons. Id. at 39:19. Hadlock's Counsel stated: "No, I don't need to." Id. at 39:20. I followed this refusal to pursue further

---

[3] Juror 6 was also questioned by the Court after raising his hand to the Court's question asking about involvement in the criminal justice system either as a defendant charged with a crime or a victim of a crime. ECF 172 at 7:23-8:5. Juror 6 stated that he had a misdemeanor conviction of possession of marijuana in the State of Delaware. Id. at 15:25-16:20. Upon further questioning by the Court, Juror 6 stated that this was his only involvement in the criminal justice system and that it would not impact his ability to be a fair and impartial juror. Id. at 37:12-13.

questioning by stating that the proffered reasons, without more, were "not enough grounds" to overcome a <u>Batson</u> objection and stated that Juror 16 "ought to come over [to the sidebar] then." <u>Id.</u> at 39:21-40:6.  Further debate occurred between me and Hadlock's Counsel on whether the two reasons proffered by Hadlock's Counsel constituted legitimate race-neutral reasons under <u>Batson</u>. <u>See id.</u> at 40:9-41:25.  I then reiterated to Counsel that Hadlock's Counsel might want to bring Juror 16 up to sidebar for questioning, to which Hadlock's Counsel again declined.  <u>Id.</u> at 41:22-25.  I then weighed the totality of the circumstances and concluded that the proffered race-neutral reasons from Hadlock's Counsel were pretextual under <u>Batson</u> step three.  Thus, I granted Mr. Skinner's objection and overruled Hadlock's peremptory challenge.  Juror 16 was then seated on the jury.  <u>Id.</u> at 42:4.

On February 9, 2026, the jury returned a verdict in favor of Skinner and against Hadlock and awarded Skinner damages of $160,000.00.  ECF 151; ECF 152.  Hadlock filed the instant Motion for New Trial on March 9, 2026.  ECF 175.  Skinner responded on March 27, 2026.  ECF 178.  Hadlock filed a reply brief on April 10, 2026.  ECF 181.

### III.    LEGAL STANDARD – MOTION FOR A NEW TRIAL

A court may grant a motion for a new trial "after a jury trial, for any reason for which a new trial has heretofore been granted in an action at law in federal court."  Fed. R. Civ. P. 59(a)(1)(A).  Courts have granted new trials when there have been prejudicial errors of law, prejudicial statements made by Counsel, or when the verdict is against the weight of the evidence. <u>See</u> <u>Maylie v. Nat'l R.R. Passenger Corp.</u>, 791 F. Supp. 477, 480 (E.D. Pa. 1992), <u>aff'd</u>, 983 F.2d 1051 (3d Cir. 1992) (citations omitted).  However, a court "should do so only when the great weight of the evidence cuts against the verdict and ... a miscarriage of justice would result if the verdict

were to stand." Leonard v. Stemtech Int'l Inc., 834 F.3d 376, 386 (3d Cir. 2016) (citation and internal quotation marks omitted).

"The decision to grant or deny a new trial is confided almost entirely to the discretion of the trial court." C.T. by Smith v. Delaplaine McDaniel Sch., No. CV 17-4463, 2019 WL 1227708, at *2 (E.D. Pa. Mar. 13, 2019) (**Baylson, J.**) (citing Blancha v. Raymark Indus., 972 F.2d 507, 512 (3d Cir. 1992)). "When a motion for a new trial is based on an alleged error involving a matter within the sound discretion of the trial court, such as the court's evidentiary rulings ..., the trial court has wide discretion in ruling on the motion." Id. (citations omitted); see also Klein v. Hollings, 992 F.2d 1285, 1289–90 (3d Cir. 1993) ("[T]he district court's latitude on a new trial motion is broad when the reason for interfering with the jury verdict is a ruling on a matter that initially rested with the discretion of the court, *e.g.* evidentiary rulings ...."). In determining whether to grant a new trial, a district court must "view[ ] the evidence in the light most favorable to the non-movant and giv[e] it the advantage of every fair and reasonable inference." Student Doe 1 v. Lower Merion Sch. Dist., No. 09-2095, 2010 WL 11558073, at *1 (E.D. Pa. Aug. 19, 2010) (**Baylson, J.**) (quoting Eddy v. V.I. Water & Power Auth., 369 F.3d 227, 230 (3d Cir. 2004)). However, no error by a Court or a party is grounds for granting a new trial unless justice requires otherwise and the error or defect affects a party's substantial rights. Fed. R. Civ. P. 61.

## IV.   PARTIES' CONTENTIONS

### a.  Hadlock's Motion for New Trial (ECF 175)

Hadlock moves for a new trial on two grounds: (1) the Court committed a reversible error *per se* when it seated two Black jurors over her peremptory strikes,[4] and (2) the Court erroneously permitted Skinner to ask former Philadelphia ADA Adara Combs hypothetical questions about

---

[4] Hadlock's Motion for New Trial ignores the fact that her Counsel conceded the strike as to Juror 6 and therefore has waived the issue.

what she might have done differently under different circumstances when she was offered as a fact witness rather than an expert witness.  ECF 175 at 1-2.

First, Hadlock argues that the Court reversibly erred by impairing her statutory right to peremptory strikes.  Id. at 6 (citing Gulf, Colorado & Sante Fe Ry. Co. v. Shane, 157 U.S. 348, 351 (1895); Kirk v. Raymark Indus., Inc., 61 F.3d 147 (3d Cir. 1995)).  Hadlock argues Kirk stands for the proposition that impairment of the statutory right to use peremptory challenges constitutes reversible error *per se*.  Id. at 6.  Hadlock contends that this Court impaired her peremptory strikes, which should have survived Skinner's Batson challenge because she offered valid, race-neutral reasons, in compliance with the second step of the Batson test, to strike the only two identifiably Black venirepersons (Jurors 6 and 16) from the jury.  Id. at 3.  She argues that the Third Circuit and other Courts of Appeals have held that a potential juror's employment, such as employment in social work organizations, and place of residence, are legitimate race-neutral reasons for a peremptory strike. Id. at 9-11 (citing Saunders v. Tennis, 483 F. App'x 738, 741 (3d Cir. 2012) (nonprecedential); United States v. Adigun, 609 F. App'x 718, 720 (3d Cir. 2015) (nonprecedential); Howard v. Moore, 131 F.3d 399, 408 (4th Cir. 1997)).

Hadlock argues that this Court also erred in permitting Skinner's Counsel to ask ADA Combs hypothetical questions during her testimony as a lay witness.  Id. at 14.  ADA Combs was brought as a lay witness to testify about her handling of Skinner's criminal prosecution.  Id.  During her testimony, this Court overruled several objections made (though sustained others) by Hadlock's Counsel to hypothetical and speculative questions from Skinner's Counsel.  Id. at 15.  These questions related to how ADA Combs may have acted differently in her investigation of Hadlock's rape accusations had she been aware of the deleted text messages between Hadlock and Skinner. Id.

8

Hadlock contends my seating of the venirepersons, despite valid, race-neutral reasons for the strikes, eviscerated her statutory right to use her peremptory strikes, constituting reversible error *per se*.  Id. at 3.  She also contends that this Court erred in overruling her objections to hypothetical questions posed to ADA Combs by Skinner's Counsel.  Id. at 14.  Therefore, she is entitled to a new trial.

### b.  Skinner's Response in Opposition (ECF 178)

Skinner opposes Hadlock's motion for a new trial on two grounds: (1) The Court correctly sustained his Batson challenge and sat the two jurors, and Hadlock failed to demonstrate that this constituted a reversible error *per se* that warrants a new trial, and (2) Hadlock has failed to demonstrate that any alleged error regarding ADA Combs' testimony affected her substantial rights. ECF 178 at 1.

As to the Batson challenge, Skinner contends the trial court's firsthand observations are given substantial deference, and the reversible error *per se* doctrine is not applicable here because Hadlock's Counsel was not wrongfully denied a peremptory challenge to which she was entitled based upon judicial error.  Id. at 3, 10.  Skinner argues that the Court correctly applied the Batson three-step framework to both Jurors 6 and 16.  Id. at 3.

For Juror 6, Skinner argues that Hadlock is not entitled to the reversible error *per se* doctrine because she voluntarily withdrew her peremptory strike of Juror 6 after the Court conducted supplemental voir dire.  Id. at 8.  Skinner notes that before the Court announced its ruling on the peremptory strike, Hadlock's Counsel stated: "Actually, we'll withdraw that peremptory."  Id.  Skinner contends that there was no Court-imposed error because no ruling was entered and no peremptory challenge was denied, and Hadlock's Counsel made a professional judgment to abandon the challenge.  Id.  Therefore, Skinner argues Hadlock lacks any basis to

claim that the Court reversibly erred when denying the peremptory strike, because the strike no longer existed. Id. at 5-6. Furthermore, the voluntary withdrawal also constitutes waiver to any objections Hadlock may have had to Juror 6's service. Id. at 8.

For Juror 16, Skinner argues that the reversible error *per se* doctrine is also inapplicable and that the Court properly applied the three-step Batson analysis. Id. at 9. Skinner contends Hadlock's refusal to bring Juror 16 forward for additional questioning to develop any record that would support her proffered race-neutral reasons demonstrates a disingenuous concern that could reasonably lead a Court to determine a pretextual motivation. Id. at 6. Therefore, Skinner argues the Court correctly sustained Skinner's Batson challenge, found that the proffered legitimate race-neutral reasons were likely pretextual, and properly sat the juror. Id.

Skinner contends that Hadlock was not denied a peremptory challenge because her Counsel simply declined to use the procedural mechanism to support their challenge and develop testimony under step two of the Batson analysis. Id. at 10. Skinner states this failure therefore prevents Hadlock from claiming that the Court reversibly erred *per se* because she declined the means of establishing her statutory right to peremptory strikes and no longer has any legitimate recourse. Id. Skinner argues the *per se* rule is a remedy for judicial error, not Counsel's strategic choices, and therefore the reversible error *per se* rule is inapplicable here. Id.

Skinner argues that ADA Combs' testimony was properly admitted as fact testimony or in the alternative, as a lay opinion under Federal Rule of Evidence 701. Id. at 13. The questions posed by his Counsel did not ask ADA Combs about expert knowledge outside of her involvement in Skinner's criminal case but instead concerned her personal, professional experience with Hadlock as part of her criminal investigation of Skinner. Id. at 15. Skinner states that this testimony thus falls squarely within the permitted bounds of Rule 701. Id. at 16.

Skinner also contends that even if the reversible error *per se* doctrine applied, Hadlock would still not be entitled to a new trial because she has not made a showing that the presence of either juror nor ADA Combs' testimony affected her substantial rights. Id. at 10. Skinner argues there is nothing in Hadlock's Motion to suggest that Jurors 6 or 16 exhibited any bias or influenced the outcome of the trial. Id. He also argues that ADA Combs' testimony was properly admitted and did not affect Hadlock's substantial rights or deprive her of a fair trial. Id. at 17. Therefore, her Motion for a New Trial should be denied.

### a. Hadlock's Reply to Skinner's Response in Opposition (ECF 181)

In her reply brief, Hadlock specifically argues that the Court erred in concluding that she did not satisfy step two of the Batson analysis for Juror 16, thereby failing to reach step three of Batson. ECF 181 at 6-7. If the Court had properly reached step three, Hadlock contends that Skinner still failed to carry his burden of proof of pretextual discrimination, and therefore her peremptory strikes should have been upheld. Id. at 8.

## V.    LEGAL DISCUSSION – BATSON CHALLENGE

### a. Batson Three-Step Analysis and Standard of Review

Batson requires a three-step analysis to be conducted by the Court when a challenge is lodged by a non-striking party. Batson v. Kentucky, 476 U.S. 79, 96-98 (1986). First, the non-striking party must make a prima facie showing that the striking party has exercised peremptory challenges on the basis of race. Second, the burden then shifts to the striking party to articulate a race-neutral explanation for striking the jurors in question. Third, the trial court must determine whether the non-striking party has carried his burden of proving purposeful discrimination. Hernandez v. New York, 500 U.S. 352, 358-59 (1991). Step Three of the Batson analysis remains a fundamental component of the Batson analysis and was recently reaffirmed by the Supreme

11

Court in May 2026.  See Pitchford v. Cain, 146 S.Ct. 1345 (2026) (finding that a Mississippi trial court unreasonably prevented defendant's counsel from pursuing a Batson challenge at step three and unreasonably failed to conduct the ordinary trial-court procedure for resolving Batson claims at step three).

The trial court is granted a high level of deference in its determination under Batson step three.  See Batson, 476 U.S. at 97 ("We have confidence that trial judges, experienced in supervising voir dire, will be able to decide if the circumstances concerning the prosecutor's use of peremptory challenges creates a prima facie case of discrimination against [B]lack jurors.").  The Third Circuit maintains this deference.  See United States v. Jacobs, 21 F.4th 106, 115 (3d Cir. 2021) ("Our appellate review of a Batson challenge is highly deferential to the trial court.").

### b.  Batson Analysis – Juror 6

There was no reversible error *per se* by seating Juror 6.  This Court correctly intervened in jury selection where Batson requires upon receiving Skinner's Batson challenge, and Hadlock's concession as to Juror 6 waives any issue on appeal.

The Third Circuit held in Kirk that compelling a party to use any number of its statutorily mandated peremptory challenges to strike a juror who should have been removed for cause is tantamount to giving the party less than its full allotment of peremptory challenges.  Kirk, 61 F.3d at 157.  Kirk does not discuss the Batson doctrine.  Id.  The jurors in Kirk stated up front that they may be biased towards the plaintiffs or could not be fair and impartial jurors but were seated by the district court.  Id. at 153–54, 160.  Therefore, the Third Circuit held that the district court should have removed these jurors for cause and erred by forcing the defendants to use their peremptory strikes to remove the jurors.  Id. at 156, 161.  This Court did not prevent or impede either party in using their peremptory strikes.  However, when a Batson challenge is lodged, a court has the duty

12

to begin a <u>Batson</u> inquiry.  <u>See Batson</u>, 476 U.S. at 98 ("The trial court then will have the duty to determine if the defendant has established purposeful discrimination.").

Skinner appropriately raised the <u>Batson</u> challenge when Hadlock's Counsel struck the only two identifiably Black venirepersons out of the jury panel (Jurors 6 and 16).  ECF 178 at 5.  <u>See</u> <u>Johnson v. California</u>, 545 U.S. 162, 173 (2005) (holding that the removal of all three African American prospective jurors from the jury can constitute an inference of discrimination sufficient to establish a prima facie case under <u>Batson</u>).  The Court then began to conduct a <u>Batson</u> step three analysis, and I proposed that Juror 6 come forward and answer additional questions.  ECF 172 at 35:16-17.  However, the Court never reached a conclusion about whether Hadlock's strike of Juror 6 violated <u>Batson</u>.  <u>Id.</u> at 38:12-13 ("Okay. All right. My decision is that this juror will be—" (sentence interrupted by Counsel)).  At this point, Hadlock's Counsel interrupted and said: "The juror will stay… Actually, we'll withdraw that peremptory."[5]  <u>Id.</u> at 38:14-19.  Because Hadlock voluntarily withdrew her peremptory strike for Juror 6, she has waived this issue.  If there is no peremptory strike, then no objection can be lodged by the non-striking party challenging the validity of said strike.  <u>See Batson</u>, 476 U.S. at 96 (holding that a defendant may establish a prima facie case of purposeful discrimination solely on evidence concerning prosecutor's *exercise of peremptory challenges* (emphasis added)).

In any event, had the Court been able to conduct a full <u>Batson</u> step-three analysis, my seating of Juror 6 would not constitute reversible error *per se*.  When conducting a <u>Batson</u> analysis, a court may be inclined to find that even the proffered race-neutral explanation under step two of

---

[5] Alternatively, Hadlock's Motion for a New Trial is denied on the basis that Hadlock's Counsel waived this claim regarding Juror 6, since Hadlock's Counsel withdrew the peremptory strike against Juror 6.  <u>See</u> <u>LeBoon v. Lancaster Jewish Cmty. Ctr. Ass'n</u>, 503 F.3d 217, 225 (3d Cir. 2007) (citing <u>United States v. Olano</u>, 507 U.S. 725, 733 (1993)) (holding that waiver is "the intentional relinquishment or abandonment of a known right"); <u>United States ex rel. Bolognese v. Brierley</u>, 412 F.2d 193 (3d Cir. 1969) (holding that an intelligently made withdrawal of a new trial motion by defendant amounted to deliberate and conscious waiver of right to appeal).

the <u>Batson</u> test contains an improper motive or a pretextual reason for the strike, such as evidence that the explanation is invoked to strike African Americans but no other non-Black venirepersons exhibiting the same characteristic.  <u>See</u> <u>Williams v. Beard</u>, 637 F.3d 195 (3d Cir. 2011) (affirming that this Court properly followed the requirements of <u>Batson</u>, which includes comparing stricken jury pool members to non-stricken members to determine pretextual discrimination).

During voir dire, Juror 14 (who is identifiably white) stated that her husband was a retired police officer.  ECF 172 at 20:23-21:8.  Juror 25 (who is also identifiably white) stated that her husband was a Pennsylvania state trooper.  <u>Id.</u>  at 27:11-28:5.  Both offered the same statement as Juror 6 (who is identifiably Black) that they could be fair and impartial jurors, and Hadlock's Counsel did not use a peremptory challenge to strike either.  <u>Id.</u> at 21:11-13, 28:10-12.  Thus, had the Court proceeded with a full <u>Batson</u> analysis under step three, Hadlock's peremptory strike of Juror 6 would have been justifiably denied, as Hadlock's Counsel attempted to strike an identifiably Black juror for the same reason they allowed a non-Black juror to remain.  Therefore, the Court did not reversibly err *per se* by seating Juror 6.

### c.  <u>Batson</u> Analysis – Juror 16

Furthermore, there was no reversible error *per se* as to Juror 16 because the Court properly conducted a full <u>Batson</u> three-step analysis for Juror 16.  Upon Skinner lodging his <u>Batson</u> challenge for Juror 16, Hadlock's Counsel proffered a race-neutral reason for the strike—namely that Juror 16 worked in a social services organization and lived in Philadelphia.   ECF 175 at 8.  Hadlock was concerned that Juror 16 would harbor bias against her because the juror may be sympathetic to "the down-trodden … such as Mr. Skinner" and Hadlock would be criticizing a similar (but unrelated) organization and the City of Philadelphia at large.  ECF 175 at 8.

14

The burden of the striking party under <u>Batson</u> step two does not require a persuasive or even plausible race-neutral reason so long as it is facially neutral. <u>Purkett v. Elem</u>, 514 U.S. 765, 767-68. Therefore, employment and place of residence can constitute valid race-neutral reasons that satisfy step two. However, a proper <u>Batson</u> analysis does not end at step two. <u>See</u> <u>Saunders</u>, 483 F. App'x at 741–42 (affirming this Court's holding that even though the prosecutor likely satisfied step two of <u>Batson</u>, the defendant failed to meet his burden of showing purposeful racial discrimination under step three). Upon receiving the race-neutral reason proffered by the striking party, the non-striking party then carries the burden of proving pretextual discrimination, and the Court is then entitled to evaluate the totality of the circumstances of the voir dire proceedings, including both parties' reasonings, and make its own determination on whether the strike should stand. <u>See</u> <u>Batson</u>, 476 U.S. at 98; <u>Hardcastle v. Horn</u>, 368 F.3d 246, 259 (3d Cir. 2004) (holding that a court that merely accepted the striking party's justification at face value failed to conduct a full <u>Batson</u> step three inquiry).

For Juror 16, Skinner's Counsel objected to Hadlock's proffered race-neutral reasons: "[F]amilies are a support circle. I don't know how that indicates anything about the criminal justice system. That could be anybody." ECF 172 at 35:8-10. This Court then provided Hadlock's Counsel an opportunity to further establish a legitimate concern of bias by questioning Juror 16. <u>Id.</u> at 39:19 ("Do you want to question her?"). Hadlock's Counsel declined the offer. <u>Id.</u> at 39:20 ("No, I don't need to."). Under <u>Batson</u> step three, I was then entitled to make my own determination that Hadlock's refusal to pursue further questioning of Juror 16 suggested purposeful discrimination. <u>See</u> <u>Batson</u>, 476 U.S. at 98. Reviewing the totality of the circumstances, I believed that Hadlock's Counsel's reasons were insufficient and pretextual. Hadlock's Counsel did not elaborate on why Juror 16's employment and place of residence could contribute to bias to

the detriment of Hadlock and declined supplemental voir dire to expand upon this reasoning.  ECF 172 at 39:14-20.  Combined with Hadlock's Counsel intent to strike the only two identifiably Black venirepersons in the jury panel, I found that Hadlock's Counsel pretextually discriminated against Jurors 6 and 16 in violation of Batson.  Therefore, this Court did not reversibly err *per se* by seating Juror 16 and denying Hadlock's peremptory strike.

### d.  Hadlock's Substantial Rights Were Not Impeded Upon By The Seating Of Jurors 6 and 16

Moreover, the presence of Jurors 6 and 16 on the jury did not impede Hadlock's substantial rights during trial.  The Third Circuit gives significant discretion to the district judge when conducting Batson analyses.  See Jacobs, 21 F.4th at 115.  In this case, one party was Black, and the other party was Caucasian.  I knew that having a Black person on the jury would provide balance and that having an all-Caucasian jury would not be appropriate—otherwise, Skinner would have a good argument that there was a Batson violation when it came to the peremptory strikes.  I also wanted to make sure that both Parties would have confidence in the judicial system and that there was a fair trial.  Therefore, having a diverse jury was important to me in ensuring a fair trial.  In this district, the jury panels are largely Caucasian.

All in all, this case was highly contested and very emotional.  Although the result may have been disappointing to both Parties, a retrial is not necessary.  Regardless of the result, a function of our judicial system is to determine if there was a fair trial.  See Warger v. Shauers, 574 U.S. 40, 50 (2014) ("The Constitution guarantees both criminal and civil litigants a right to an impartial jury.").  Here, both Parties had a fair trial and an impartial jury, and justice will not be served by having a new trial because there were two Black people on the jury.

## VI.    LEGAL DISCUSSION – WITNESS TESTIMONY

A party may only claim error in a ruling to admit or exclude evidence, such as witness testimony, if the error affects a substantial right of the party.  Fed. R. Evid. 103(a).  The Third Circuit will review the district court's rulings on evidence for abuse of discretion.  U.S. v. Moore, 375 F.3d 259, 262 (3d Cir. 2004).  A finding of an abuse of discretion requires the district court to base its decision upon a clearly erroneous finding of fact, an erroneous conclusion of law, or an improper application of law to fact.  Satterfield v. Dist. Att'y Phila., 872 F.3d 152, 158 (3d Cir. 2017).

Federal Rule of Evidence 701 states that "if a witness is not testifying as an expert, testimony in the form of an opinion is limited to one that is rationally based on the witness' perception, helpful to clearly understanding the testimony or determining a fact in issue, and not based on specialized knowledge required of expert witness testimony."  Fed. R. Evid. 701.  A lay witness may testify to a matter only if "the witness has personal knowledge of the matter," which may be proven by the witness's own testimony.  Fed. R. Evid. 602.

As a general principle, lay witnesses cannot testify as to hypotheticals.  See McCowan v. City of Phila., 603 F. Supp. 3d. 171, 189 (E.D. Pa. 2022) (Marston, J.).  During trial, the Court sustained several objections made by Hadlock's Counsel during Skinner's examination of ADA Combs for being hypothetical and speculative.  See, e.g., ECF 167 at 46:14-17, 49:10-15, 57:2-10.  However, Hadlock's Counsel argues that the Court erroneously overruled other objections made for similar reasons and, because ADA Combs was not offered as an expert witness, her testimony unfairly prejudiced Hadlock.  ECF 175 at 15.

This Court finds that ADA Combs testified properly within her capacity as a lay witness under Rule 701.  A lay witness may testify to specialized or technical subject matter when the

witness has particularized knowledge by virtue of her experience.  McCowan, 603 F. Supp. 3d. at 188.

In this case, ADA Combs was the prosecutor on the underlying criminal case against Skinner and testified as to specialized personal knowledge of her involvement in the case.  ECF 167 at 30:14-16.  Her answers to questions posed by Skinner's Counsel directly related to her handling of Skinner's criminal prosecution in 2019.  She testified as to how a complainant's actions upon reporting a sexual assault may affect her investigation, such as what they do or do not reveal to her during the report.  See Id. at 33:12-34:4.  Although some of these questions contained "if" conditionals, they still related to her work as the prosecutor on Skinner's criminal case and were helpful for the jury to understand why the prosecution of Skinner may have been malicious.  ADA Combs was therefore properly designated as a lay witness and correctly testified as such.

ADA Combs was not an expert witness under Federal Rule of Evidence 702, which establishes rules as to witnesses brought before the court who are providing an application of their expertise to litigation in which they are not involved, rather than a witness testifying as to personal involvement and their perception of the facts presented.  Fed. R. Evid. 702.

Even if ADA Combs should have been designated as an expert witness due to the number of hypothetical and speculative questions posed by Skinner's Counsel, the Court finds that this failure did not impair Hadlock's substantial rights under Rule 103 or constitutes more than harmless error.  The Third Circuit has held that a non-constitutional error is harmless when "it is highly probable that the error did not contribute to the judgment."  United States v. Zehrbach, 47 F.3d 1252, 1265 (3d Cir. 1995) (citing Government of Virgin Islands v. Toto, 529 F.2d 278, 284 (3d Cir. 1976)).  The Third Circuit will consider the scope of the objectionable acts and their

18

relationship to the proceeding, the ameliorative effect of any curative instructions given, and the strength of the evidence supporting the prevailing party.  Id.

As discussed supra Part V.d, this Court finds that both parties had a fair trial, and no substantial rights were impeded by either the seating of Jurors 6 and 16 or ADA Combs's lay witness testimony.

## VII.    CONCLUSION

An appropriate order follows.

\\adu.dcn\paed\PHL-DATA\Judge_Baylson\CIVIL 22\22-3087 Skinner v. Hadlock\22-3087, Memo Motion for New Trial Final.docx